**O**

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| DOUGLAS HARP and LEADING EDGE TRUCKING, INC., | Case No. 5:12-cv-00760-ODW(DTBx) |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [32]** |
| v. | |
| CONVERIUM INSURANCE (NORTH AMERICA) INC. later known as FINIAL INSURANCE COMPANY now known as ALLIED WORLD REINSURANCE COMPANY and DOES 2–100, inclusive, | |
| Defendants. | |

19

## I. INTRODUCTION

20   Defendant Converium Insurance (North America) Inc.[1] moves for summary

21   judgment on Plaintiffs' First Amended Complaint alleging breach of an insurance

22   contract and of the implied covenant of good faith and fair dealing.  Converium's

23   Motion requires the Court to resolve a single issue: Does an insurer have an obligation

24   to accept a policy-limit settlement demand that releases only two of three insureds,

25   where the third insured faces potential vicarious liability for the released insureds?

26

27

28   [1] Prior to this action, Converium became known as Finial Insurance Co.  It is now known as Allied
World Resinusrance Co.  The Court uses "Converium" to maintain consistency with the underlying
state-court action giving rise to this suit.

The Court's answer is no.  Having carefully considered the arguments advanced in support of and in opposition to Converium's Motion, the Court finds this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.  The January 28, 2013 hearing on this matter is therefore **VACATED**, and no appearances are necessary.  For the reasons discussed below, the Court **GRANTS** Converium's Motion.

## II.   FACTUAL BACKGROUND

On March 18, 2005, Plaintiff Douglas Harp sued, among others, Leading Edge Trucking Company, George Armitage, and Mesa Contracting Corporation for substantial injuries he sustained in a late 2003 workplace incident (the "*Harp* suit"). (SUF 4, 5.)  The incident occurred at a construction job site under Mesa's supervision. Harp's injuries were the result of Armitage's driving a large dump truck owned by Leading Edge into the vehicle Harp occupied.  (SUF 4.)  Harp alleged in the *Harp* complaint that Leading Edge and Mesa were vicariously liable for Armitage's conduct.  After paying worker's compensation benefits to Harp, Harp's worker's compensation insurer (St. Paul Fire & Marine Insurance Company) intervened in the *Harp* suit to recover the benefits it paid Harp.  (SUF 12.)

At the time of the accident, Leading Edge was covered by a commercial-lines policy through Converium with a $750,000-per-accident limit.  (SUF 1.)  The Converium policy defined an "insured" as, among other things, "Anyone liable for the conduct of an 'insured' described above [including Leading Edge and Armitage] but only to the extent of that liability."  (Stip. Ex. A, at 19.)  Also at this time, Mesa had a separate liability insurance policy through Peerless Insurance Company with a $1,000,000-per-accident limit.  (SUF 11.)

Leading Edge tendered the *Harp* suit to Converium, and Converium retained counsel to defend Leading Edge.  (SUF 13.)  Converium also provided defense to Armitage subject to a reservation of rights.  (SUF 14.)  Prior to trial in the *Harp* suit, / / /

2

Harp and St. Paul offered to settle the matter for the $750,000 limit of the Converium Policy.  (SUF 16.)  This demand included releases for Leading Edge, Armitage, and "their employees, agents, principals[, etc.]," but it expressly stated that the demand did *not* include a release for Mesa.  (*Id.*)

On October 18, 2007, counsel for Converium attempted to obtain a release of any claim against Mesa under the Converium policy with respect to Harp and St. Paul's contentions in the *Harp* suit that Mesa was vicariously liable for Armitage's conduct.  (SUF 17.)  Ultimately he was unable to obtain the release.  (*Id.*)

On October 19 and November 1, 2007, counsel for Converium wrote to Harp's counsel to assert his belief that Mesa qualified as an insured under the Converium policy because it could be held vicariously liable for Leading Edge's and Armitage's actions.  (SUF 18.)  Converium's counsel explained that it therefore could not accept Harp and St. Paul's demand absent a release for Mesa because California law precludes an insurer from accepting a policy-limit demand where the claimant would release only some, but not all, of the insurer's insureds.  (*Id.*)  Harp and St. Paul never ultimately offered to include a release for Mesa in their policy-limit demand.  (SUF 19.)

In mid 2008, following trial in the *Harp* suit, Leading edge suffered an adverse verdict and judgment in the amount of $1,528,500—more than double the Converium policy limit.  (SUF 20, 21.)  In addition, the jury found that Mesa was not Armitage's employer at the time of the accident and that Armitage was not acting within the course and scope of his employment with Mesa at the time of the accident.  (SUF 21, 22.)

On February 20, 2009, Armitage argued on appeal that Mesa was in fact vicariously liable for Leading Edge's conduct.  (SUF 24.)  In April 2009, Mesa tendered its defense in the *Harp* suit to Converium for the first time, and Converium agreed to defend Mesa under the Converium policy subject to a reservation of rights. The *Harp* suit judgment was affirmed in March 2010, and in April 2010 Converium

paid the policy limit on behalf of Leading Edge in partial satisfaction of the *Harp* judgment.

Leading Edge subsequently assigned its rights under the Converium Policy to Harp.   (SUF 32.)   Harp and Leading Edge then filed this action as co-Plaintiffs alleging claims for (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; and (3) declaratory relief, all relating to Converium's failure to accept Harp and St. Paul's policy-limit demand in the *Harp* suit.   Converium now moves for summary judgment arguing that it was precluded by California law from accepting the demand because it did not include a release for Mesa.   (ECF No. 32.)

### III.   LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial.   *Id.*; Fed. R. Civ. P. 56(c).   Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.   *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.   *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).   A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).   An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.   *Id.*   Where the moving and nonmoving parties' versions of events differ, courts / / /

are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.  DISCUSSION

California law implies a duty for liability insurers to accept a reasonable settlement offer within policy limits. *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 464–65 (2007).  In evaluating the reasonableness of a settlement offer, the insurer must consider "the probable liability of the insured and the amount of that liability, without regard to any coverage *defenses*."  *Rappaport-Scott v. Interinsurance Exch. of the Auto. Club*, 146 Cal. App. 4th 831, 836 (2007) (emphasis added).  If the insurer fails to accept a reasonable settlement offer within policy limits, it may be held liable for the entire judgment, even if the judgment exceeds policy limits.  *Id.*

But California law also holds that the implied covenant of good faith and fair dealing prohibits an insurer from accepting a settlement demand that would exhaust its policy limit without obtaining releases for all its insureds.  *Lehto v. Allstate Ins. Co.*, 31 Cal. App. 4th 60, 72, 74–75 (1994) (had insurer accepted a policy-limit demand for one of its insureds but not another, "it would have left one of its insureds bereft of coverage, an act of bad faith"); *Strauss v. Farmers Ins. Exch.*, 26 Cal. App. 4th 1017, 1021–22 (1994) ("[A]cceptance of an offer that left two of its insureds bereft of coverage would have breached [the insurer's] implied covenant of good faith and fair dealing.").

The parties here do not dispute the reasonableness of Harp and St. Paul's policy-limit demand in the *Harp* suit; they contest only Mesa's status as an insured under the Converium policy at the time the demand was made.  If Mesa was an insured under the terms of the Coverium policy, then Converium was not obligated to—and indeed was prohibited from—accepting the demand, regardless of the outcome at trial.  The Court therefore proceeds to consider whether Coverium

/ / /

1  properly considered Mesa an insured under the policy for purposes of rejecting Harp
2  and St. Paul's policy-limit demand.

3      An "insured" under an insurance policy "includes both the named insured(s)
4  and anyone else included in the policy's definition of 'insured.'"  *Am. States v.*
5  *Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 26 (2009).  The Converium policy
6  defines "insureds" to include the following:

7          a.    You for any covered "auto"
8          b.    Anyone while using with your permission a covered "auto"
9                you own, hire or borrow . . . .
10         (Stip. Ex. A, at 19.)

11 These definitions indisputably cover Leading Edge (under paragraph (a), as the owner
12 of the dump truck Armitage drove into Harp) and Armitage (under paragraph (b)).

13     But liability insurance policies for commercial motor vehicles typically also
14 include a clause that defines an "insured" to include one who is vicariously liable for
15 the conduct of a named insured or a permissive user operating the covered vehicle.
16 *See Am. States*, 180 Cal. App. 4th at 22.  The Converium policy is no different;
17 paragraph (e) of the "WHO IS AN INSURED" section of the policy further defines an
18 insured as "Anyone liable for the conduct of an 'insured' described above but only to
19 the extent of that liability."  (Stip. Ex. A, at 19.)  The California Court of Appeal has
20 construed an *identical* provision as including any "person or entity that is *potentially*
21 vicariously liable" for the conduct of another insured.  *Am. States*, 180 Cal. App. 4th
22 at 22 (emphasis added).

23     Plaintiffs here cannot seriously contend that Mesa did not fall within
24 paragraph (e)'s definition of an insured when Harp and St. Paul made their policy-
25 limit demand on Converium in the *Harp* suit.  The underlying *Harp* complaint
26 *specifically alleged* that Mesa was vicariously liable for Armitage's actions:

27         Defendant Armitage was employed by Defendants [Leading Edge
28         Trucking, Inc. and Mesa Contracting Corporation] and each of them[,]

*who are liable for the acts and omissions of Defendant Armitage*[, which] were done within the course and scope of his employment and/or such acts were required or incidental to his duties and/or the conduct of Armitage was reasonably foreseeable by Defendants and each of them. (Stip. Ex. B, at 62 (emphasis added).)

Indeed, Harp and St. Paul proceeded to trial on that theory and even asked the jury to make special-verdict findings regarding whether Armitage was Mesa's employee and was acting within his scope of employment with Mesa at the time of the incident. (SUF 22.) The *Harp* suit complaint and trial strategy therefore facially evidence Harp and St. Paul's belief and assertion that Mesa was potentially liable for Armitage's actions. The Court therefore holds that Mesa qualified as an insured under paragraph (e) of the Converium policy at the time Harp and St. Paul made their presuit policy-limit demand in the *Harp* suit.

Neither the jury's ultimate finding that Mesa was not vicariously liable nor Mesa's option not to tender its defense to Converium prior to trial change this result. Unlike the duty to indemnify, the duty to defend arises with the mere *potential* for liability. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("[T]he duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded.") At the time of Harp's pre-trial policy-limit demand, the outcome of the *Harp* suit was unknown, and there was still a possibility that Mesa could be found vicariously liable. Harp cannot now play Monday-morning quarterback and insist that Mesa's ultimate absolution from liability or initial decision not to tender its defense to Converium beg a finding that Converium's presuit rejection of his policy-limit demand was unreasonable.

Plaintiffs attempt to attack the applicability of paragraph (e) by contending that the Converium policy's Additional Insured endorsement "amends the 'WHO IS AN INSURED' section of the policy to include '*only* those categories of person(s) or

organization(s) described' in paragraphs A, B, and C of the endorsement."  (Opp'n 12 (emphasis added).)  Nonsense.  The Additional Insured endorsement is exactly what it purports to be: *additional*.  And as Converium astutely notes, any other interpretation would lead to absurd results: if, as Plaintiffs suggest, the endorsement replaces the categories contained in the "WHO IS AN INSURED" section, then Leading Edge, as the policyholder, would not even qualify as an insured.

Plaintiffs also seek to avoid this Court's holding by arguing that Converium should have accepted Harp's policy-limit demand because California courts are split "regarding whether the release of the principle tortfeasor acts to extinguish the liability of the vicariously liable tortfeasor."  (Opp'n 13.)  Under Plaintiffs reading of the relevant law, Converium could safely have accepted the policy-limit demand even without a waiver for Mesa because acceptance of the demand with respect to Armitage and Leading Edge would have eliminated any potential liability for Mesa. This argument flirts very seriously with a violation of Rule 11(b)(2).[2]

The rule established in published California case law is clear: the release of an agent does not absolve the principal of vicarious liability.  *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 303 (1985) ("[T]he liability of a principal for the tortious acts of his agent, even though wholly vicarious, survives the release of the agent." (quoting *Ritter v. Technicolor Corp.*, 27 Cal. App. 3d 152, 154 (1972))); *see also Mayhugh v. County of Orange*, 141 Cal. App. 3d 763 (1983) ("The Legislature could not have intended that a settlement with one defendant which partially compensates the plaintiff for injuries sustained would effectively block the road to complete recovery.")

In spite of this unambiguous authority, Plaintiffs assert that an *unpublished* California Court of Appeal decision—*Pacific Union Conference of Seventh-Day Adventists v. Superior Court*, 219 Cal. Rptr. 260, 261 (1985)—creates a split of

---

[2] Federal Rule of Civil Procedure 11(b)(2) provides: "By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the claims, defenses, and other legal contentions are warranted by existing law . . . ."

authority on this rule.  In *Pacific Union*, the Court of Appeal acknowledged *Mesler*, *Mayhugh*, and *Ritter*, but proceeded to adopt the dissenting opinion in *Mayhugh* as its own in a published decision.  *Id.*  In doing so, the court in *Pacific Union* noted its hope that the case would "provide a vehicle for a careful and definitive analysis by the Supreme Court of this very important issue."  *Id.*  The California Supreme Court responded by denying review and ordering the *Pacific Union* opinion be unpublished. And importantly, under California law, unpublished Court of Appeal decisions are not precedent, and cannot even be cited except in narrow circumstances.  *Flores v. Transamerica Homefirst Inc.*, 93 Cal. App. 4th 846, 852 (2001) (noting that California Rule of Court 977(a) (which has since been renumbered as California Rule of Court 8.1115) precludes the Court of Appeal's reliance on an unpublished decision); *Waranch v. Gulf Ins. Co.*, 218 Cal. App. 3d 356, 360 n.1 (1990) ("Our state rules of court bar us from citing or relying on unpublished opinions except as necessary to apply res judicata or collateral estoppel principles.").   Thus despite Plaintiffs insistence to the contrary, *Pacific Union* cannot be said to create a split of authority regarding whether the release of the principle tortfeasor acts to extinguish the liability of the vicariously liable tortfeasor.

In sum, the Court finds that Mesa was an insured as defined by paragraph (e) of the Converium policy's definition of "insured" because the *Harp* suit created a potential that Mesa would be held vicariously liable for Leading Edge and Armitage's actions.  As a result, Converium did not breach its implied covenant of good faith and fair dealing in declining to accept Harp and St. Paul's pre-suit policy-limit demand, and Converium is entitled to judgment as a matter of law.

/ / /

/ / /

/ / /

/ / /

/ / /

## V.    CONCLUSION

For the reasons addressed above, the Court hereby **GRANTS** Converium's Motion for Summary Judgment (ECF No. 32).  A judgment will issue.

**IT IS SO ORDERED.**

January 22, 2013

_____

**HON. OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**